HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEFFREY HILL and CHERIE BURKE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MULTICARE HEALTH SYSTEM, *et al.*,<br><br>Defendants. | CASE NO. 2:25-cv-01935-RAJ<br><br>ORDER |

## I.      INTRODUCTION

THIS MATTER comes before the Court on Plaintiffs Jeffrey Hill and Cherie Burke's Motion to Remand, Dkt. # 12.   The Court has reviewed the motion, the submissions in support of and in opposition to the motion, and the balance of the record. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion.

## II.      BACKGROUND

A recent amendment to the Washington Equal Pay and Opportunities Act ("EPOA") requires employers "with 15 or more employees" to disclose in "each posting for each job opening" the "wage scale or salary range" and "a general description of all of the benefits and other compensation to be offered to the hired applicant."  RCW 49.58.110(1)(a), (3).

ORDER – 1

The amendment's enactment spawned numerous putative class actions challenging alleged pay transparency violations, including this case. Indeed, according to Defendant MultiCare Health System ("MultiCare"), Plaintiffs together are the lead plaintiffs in at least 32 separate EPOA cases. Dkt. # 15 at 4.

In this case, Plaintiffs allege that Ms. Burke applied for a job opening in Washington with MultiCare on or about June 13, 2023. Dkt. # 1-6 ¶ 25. Similarly, Mr. Hill applied for a job opening in Washington with MultiCare on or about June 16, 2025. *Id.* ¶ 26. The job postings Plaintiffs applied to "did not disclose the wage scale or salary range, and a general description of all of the benefits and other compensation to be offered to the hired applicant." *Id.* ¶ 27. As a result of the lack of pay information, Plaintiffs were "unable to determine the pay range for the positions"; "unable to evaluate the pay for the position and compare that pay to other available positions in the marketplace, which negatively impacts Plaintiffs' current and lifetime wages"; their "ability to negotiate pay remains adversely affected"; and they "lost valuable time applying" for the positions. *Id.* ¶¶ 31–34.

On August 6, 2025, Plaintiffs filed the operative First Amended Class Action Complaint in King County Superior Court. Dkt. # 1-6. On September 4, 2025, while this case was pending in state court, the Washington Supreme Court issued its decision in *Branson v. Washington Fine Wine & Spirits LLC*, 574 P.3d 1031 (Wash. 2025). In that case, the Washington Supreme Court considered the certified question: "What must a Plaintiff prove to be deemed a 'job applicant' within the meaning of RCW 49.58.110(4)?" *Branson*, 574 P.3d at 1034. It answered:

> A job applicant need not prove they are a 'bona fide' applicant to be deemed a 'job applicant.' Rather, in accordance with the plain language of RCW 49.58.110(4), a person must apply to any solicitation intended to recruit job applicants for a specific available position to be considered a "job applicant," regardless of the person's subjective intent in applying for the specific position.

ORDER – 2

*Id.* at 1040. On October 6, 2025, MultiCare removed this case to federal court based on the Class Action Fairness Act ("CAFA"). Dkt. # 1. Plaintiffs then moved to remand. Dkt. # 12.

### III. LEGAL STANDARD

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). In the typical case, there is a "strong presumption against removal jurisdiction" and the "court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). However, "no antiremoval presumption attends cases involving the CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Even so, the "rule that a removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c) applies as well to a case removed pursuant to the CAFA as to any other type of removed case." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016). "The party invoking federal jurisdiction bears the burden of establishing" Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### IV. DISCUSSION

#### A.   MultiCare's Notice of Removal Was Untimely

Plaintiffs first argue that MultiCare's "Notice of Removal should be denied as untimely." Dkt. # 12 at 5. MultiCare argues that *Branson* constitutes a "change in law that created 'new and different grounds for removal' under 28 U.S.C. § 1446(b)(3)." Dkt. # 15 at 6. The Court agrees with Plaintiffs.

Both parties assert that "a defendant may properly remove within 30 days when a change of law 'reveals a new and different ground of removal." Dkt. # 15 at 7; Dkt. # 12 at 5. The law is not as straightforward as the parties present. 28 U.S.C. § 1446(b) provides two 30-day periods for removal. First, under § 1446(b)(1), a party generally must remove

ORDER – 3

a case within 30 days of receiving the complaint.  28 U.S.C. §§ 1446(b)(1), 1453(b); *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1237 (9th Cir. 2014).  Here, it is undisputed that MultiCare did not remove the case within this timeframe.  Second, under § 1446(b)(3), "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).  Courts have recognized that § 1446(b)(3) is ambiguous.  *See Fore Stars, Ltd. v. City of Las Vegas*, 488 F. Supp. 3d 982, 988–89 (D. Nev. 2020).  Although "order or other paper" could be read to include an intervening appellate decision providing a new basis for removability, the statute also implies that the "order or other paper" is one received "through service" in the parties' litigation.  *Id.* at 989.  In general, courts have "almost uniformly held that a decision in an unrelated action is not an 'order or other paper' that opens § 1446(b)(3)'s second removal window."  *Id.*  Under this line of cases, MultiCare's reliance on § 1446(b)(3) appears misplaced.

The two § 1446(b) removal periods, however, "are not the exclusive periods for removal."  *Rea*, 742 F.3d at 1238.  In addition, "a defendant may remove a case from state court within thirty days of ascertaining that the action is removable under CAFA, even if an earlier pleading, document, motion, order, or other paper revealed an alternative basis for federal jurisdiction."  *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1180 (9th Cir. 2015).  In this context, a party may "ascertain removability . . . based on intervening case law."  *Goodman v. Wells Fargo Bank*, 602 Fed. App'x 681, 682 (9th Cir. 2015) (citing *Rea*, 742 F.3d at 1237–38).  However, district courts have interpreted this rule to apply only to removal based on the CAFA.  *See Fore Stars*, 488 F. Supp. 3d at 992 (declining to find intervening change in law triggered new removal period because the removal was

ORDER – 4

"predicated on traditional, federal-question jurisdiction and presumptively does not belong in federal court.").[1]

Here, MultiCare argues that *Branson* revealed two new bases for removal. First, "[b]y confirming that all job applicants (regardless of their desire to acquire employment) may seek up to $5,000 for a non-compliant posting, *Branson* made plain that the amount in controversy far exceeds CAFA's threshold[.]" Dkt. # 15 at 8. Second, *Branson* "gave rise to new federal questions—namely, whether imposing up to $5,000 per applicant without proof of actual harm violates the Excessive Fines Clause and Due Process[.]" *Id.* These arguments are not persuasive.

*Branson* did not provide a new basis for MultiCare to determine that the amount in controversy exceeds CAFA's $5 million threshold. MultiCare calculated the amount in controversy by multiplying (1) the number of individuals who meet the class definition as set out in the Amended Complaint by (2) the amount of statutory damages under the EPOA ($5,000 per class member). Dkt. # 1 at 6. That information was available to MultiCare when it received the Amended Complaint. At most, *Branson* precluded MultiCare from making certain arguments about the scope of the Amended Complaint's class definition. But the "amount in controversy is measured by Plaintiff's claims, not Defendant's defenses." *Murphy v. Am. Gen. Life Ins. Co.*, No. 14-cv-486, 2014 WL 3417606, *3 (C.D. Cal. July 1, 2014) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). Thus, *Branson* did not reveal an amount in controversy for this case that was not already known to MultiCare.

Nor can MultiCare claim that *Branson* gave rise to new federal questions. Under the reasoning of *Fore Stars*, as discussed above, it is doubtful that an intervening decision

---

[1] Both parties cite to *Fritsch v. Swift Trans. Co. of Az., LLC*, 899 F.3d 785 (9th Cir. 2018). The cited language in *Fritsch* states: "An intervening change in the law that 'gives rise to a new basis for subject-matter jurisdiction' qualifies as a subsequent event that justifies a *successive removal petition*." *Id.* at 789 (emphasis added). The cited statement does not expressly apply to *non-successive* removals, as in this case. Moreover, the Court observes that *Fritsch* involves removal based on the CAFA.

ORDER – 5

creating a new basis for federal question jurisdiction, as opposed to CAFA jurisdiction, triggers a new 30-day removal period at all.  In any case, "federal jurisdiction 'depends solely on the plaintiff's claims for relief and not on anticipated defenses to those claims . . . .'"  *City of Oakland v. BP PLC*, 969 F.3d 895, 903 (9th Cir. 2020); *see also Gritchen v. Collier*, 254 F.3d 807, 812 (9th Cir. 2001) ("Simply raising a constitutional argument in defense of an action that is brought in state court does not open the federal forum.").  Thus, even if MultiCare intends to challenge the constitutionality of the EPOA based on the *Branson* decision, that does not give rise to a new basis for asserting federal question jurisdiction.

In sum, the Washington Supreme Court's decision in *Branson* did not trigger a new removal period, and MultiCare's removal of this case was therefore not timely.  This case should be remanded for this reason alone.  As discussed below, the Court also finds that the case should be remanded for lack of Article III standing.

## B.      Plaintiff Lacks Article III Standing

To establish Article III standing, the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v Robins*, 578 U.S. 330, 338 (2016).  This case involves injury in fact, the "first and foremost of standing's three elements." *Id.* (citation modified).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* (quoting *Lujan*, 504 U.S. at 560).

"Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341.  Thus, "a bare procedural violation, divorced from any concrete harm" does not "satisfy the injury-in-fact requirement of Article III."  *Id.*  To determine whether a statutory violation constitutes a concrete harm, courts in the Ninth Circuit engage in a two-part inquiry. *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 679 (9th Cir.

ORDER – 6

2021), *abrogated on other grounds by Healy v. Milliman, Inc.*, 164 F.4th 701 (9th Cir. 2026).  First, courts consider "whether the statutory provisions at issue were established to protect . . . concrete interests (as opposed to purely procedural rights)." *Id.* (quoting *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1116 (9th Cir. 2017)).  Second, if the answer is yes, then courts "assess 'whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests.'" *Id.* (quoting *Robins*, 867 F.3d at 1116).

Here, because Plaintiffs assert a violation of their statutory right to wage or salary information under the EPOA, the Court will proceed under the *Magadia* factors.  Under the first step, the EPOA's disclosure requirement was enacted to protect concrete interests.  Specifically, as several other courts in this District have found, the EPOA's disclosure requirement "was established to protect applicants by arming them with sufficient information to ensure fair and equitable pay negotiations, and to avoid wasting time interviewing for positions whose pay would never be adequate." *Spencer v. Vera Whole Health, Inc.*, No. 24-cv-337, 2024 WL 3276578, at *3 (W.D. Wash. July 2, 2024) (analyzing legislative history); *see, e.g.*, *Hill v. ACV Auctions Inc.*, No. 25-cv-616, 2025 WL 1582249, at *3 (W.D. Wash. June 4, 2025) (same); *Hill v. Hydromax USA LLC*, No. 25-cv-1621, 2025 WL 3677481, at *3 (W.D. Wash. Dec. 18, 2025) (same); *Davis v. Delta Air Lines, Inc.*, No. 24-cv-954, 2026 WL 914781, at *3 (W.D. Wash. Apr. 3, 2026) (same).

Under the second step, the alleged EPOA violation in this case does not actually harm, or present a material risk of harm, to the concrete interests the EPOA is intended to protect.  Courts in this District have held that "unless the plaintiff was 'a bona fide applicant' for employment, an EPOA violation involving 'a job posting with no compensation information included' does not 'by itself . . . manifest concrete injury[.]" *Davis*, 2026 WL 914781, at * 3 (quoting *Hill v. Les Schwab Tire Ctrs. of Wash. LLC*, No. 24-cv-425, 2025 WL 3062646, at *4 (W.D. Wash. Oct. 31, 2025)).  "This makes sense because failing to disclose pay information cannot impact pay negotiations, time spent

ORDER – 7

interviewing, or compensation for a job the plaintiff never actually intended to pursue." *Id.* "Thus, 'a nominal applicant with no interest in the position will neither receive a benefit from early pay disclosure nor be harmed by the lack thereof.'" *Id.* (quoting *Les Schwab*, 2025 WL 3062646, at *4).

Plaintiffs allege that as a result of Multicare's disclosure failure, they "lost valuable time" applying for the position, and their "ability to negotiate pay" and "lifetime wages" were adversely affected.  ¶¶ 31–34.  "But time lost in merely submitting an application is 'not an injury that the EPOA seeks to prevent or redress.'" *Partridge v. Heartland Express Inc. of Iowa*, No. 24-cv-5486, 2024 WL 4164245, at *4 (W.D. Wash. Sept. 12, 2024) (quoting *Vera Whole Health*, 2024 WL 3276578, at *3).  "A generalized assertion of time lost, therefore, does not support Article III standing."  *Id.; see also Davis*, 2026 WL 914781, at *7 (noting that to the extent plaintiff was not a bona fide applicant, time lost for applying to the position was "self-inflicted and, in any event, 'not an injury that the EPOA seeks to prevent or redress.'") (quoting *ACV Auctions*, 2025 WL 1582249, at *3).  Next, Plaintiffs' allegations regarding the impact on their "ability to negotiate pay" and "lifetime wages" are conclusory and speculative, and thus cannot support Article III standing.  There is no indication in the record that Plaintiffs would have been selected for an interview or would engage in pay negotiations.  Without these facts, the Court cannot conclude Plaintiffs suffered, or had a material risk of suffering, the type of harm contemplated by the EPOA.  *See Spencer v. Total Renal Care, Inc.*, No. 24-1359, 2024 WL 4834901, at *3 (W.D. Wash. Nov. 20, 2024) (finding "conclusory" and "boilerplate" allegations do not support Article III standing); *Spencer v. Aramsco Inc.*, No. 25-cv-1672, 2026 WL 376942, at *3 (W.D. Wash. Feb. 11, 2026) (finding allegations regarding adverse effect on pay negotiations and economic harm "assume without support that [plaintiff] would have been selected for an interview and ultimately hired for this or equivalent jobs.").

MultiCare's arguments in favor of Article III standing are unpersuasive.  MultiCare argues that under *Branson*, Plaintiffs fall within the EPOA's "zone of interest." Dkt. # 15

ORDER – 8

at 12. This argument "draws a false equivalency between state and federal standing." *Aramsco*, 2026 WL 376942, at *4. Next, MultiCare points to allegations regarding economic harm and lost time. Dkt. # 15 at 13–14. These arguments are rejected for the reasons discussed above. Finally, MultiCare argues that Plaintiffs allege an "informational" injury. *Id.* at 14. As discussed above, however, courts in the Ninth Circuit apply the *Magadia* test to determine whether a statutory violation, such as omission of statutorily required information, constitutes concrete harm. The facts of this case do not support Article III standing under that test.

In sum, the Court finds this case must be remanded for lack of Article III standing. In doing so, the Court joins numerous other courts in this District that have reached the same conclusion in nearly identical circumstances. *See Hill v. Airgas USA LLC*, No. 25-cv-1531, 2025 WL 3640901, *3 (W.D. Wash. Dec. 16, 2025) (collecting cases).[2]

**C.    The Futility Exception Does Not Apply**

"Ordinarily, when a district court concludes that it lacks subject matter jurisdiction over an action removed to federal court, the appropriate remedy is to remand the case to state court." *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 920 n.6 (9th Cir. 2022) (citing 28 U.S.C. § 1447(c)). "A narrow 'futility' exception to this general rule permits the district court to dismiss an action rather than remand it if there is 'absolute certainty' that the state court would dismiss the action following remand." *Id.* (quoting *Polo*, 833 F.3d at 1197–98). The Court does not find there is "absolute certainty" that this case will be dismissed in state court. "State courts are not bound by the constraints of Article III." *Polo*, 833 F.3d at 1196. Thus, it is possible that this case may proceed in state court even though Plaintiffs did not suffer an injury sufficient to support Article III standing in federal court. *See Milito v. Lucid Grp. USA Inc.*, No. 25-cv-1664, 2025 WL 3640898, at *3 (W.D. Wash. Dec. 16, 2025) (declining to apply futility exception in similar

---

[2] The Court declines to reach Plaintiffs' remaining arguments for remand.

ORDER – 9

EPOA case); *Airgas*, 2025 WL 3640901, at *4 (same); *Davis*, 2026 WL 914781, at *8 (same).

## V.  CONCLUSION

For the forgoing reasons, the Court **GRANTS** Plaintiffs' Motion to Remand, Dkt. # 30.  This case is remanded to King County Superior Court

DATED this 15th day of May, 2026.

_____

The Honorable Richard A. Jones
United States District Judge

ORDER – 10